Frank LaForge (SBN 251141) (Designated Counsel of Service)
HOLLAND & HART LLP
5441 Kietzke Lane, 2nd Floor
Reno, Nevada 89511
(775) 327-3081
(775) 786-6179 fax
fzlaforge@hollandhart.com

Murray D. Feldman (*Pro Hac Vice pending*)
Alison C. Hunter (*Pro Hac Vice pending*)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
(208) 342-5000
(208) 343-8869 fax
mfeldman@hollandhart.com
achunter@hollandhart.com

*Attorneys for Plaintiff Sierra Snowmobile Foundation, et al.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA SNOWMOBILE FOUNDATION, a nonprofit corporation; JEFF WITTMAN; MARY KRUPKA; JOHN WATTS; BLUERIBBON COALITION, INC, a nonprofit corporation; AMERICAN COUNCIL OF SNOWMOBILE ASSOCIATION INC., a nonprofit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES FOREST SERVICE, Pacific Southwest Region; JASON KUIKEN, in his capacity as Forest Supervisor for the Stanislaus National Forest; UNITED STATES DEPARTMENT OF AGRICULTURE, United States Forest Service, <br><br> Defendants. | No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

# I.  JURISDICTION

1.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §§2201-2202 (declaratory judgment), and 5 U.S.C. §§702, 706 (Administrative Procedure Act or "APA").

2.     The federal government has waived sovereign immunity pursuant to 5 U.S.C. §702.

3.     Plaintiffs Sierra Snowmobile Foundation ("SSF"), Blueribbon Coalition, Inc. ("BRC"), American Counsel of Snowmobile Association Inc. ("ACSA"), Jeff Wittman, Mary Krupka, and Jeff Watts (collectively "Plaintiffs") have exhausted all administrative remedies.

# II.  INTRODUCTION

4.     Plaintiffs bring this action challenging Defendants' United States Forest Service and Forest Supervisor Jason Kuiken's ("Defendants") issuance of the Stanislaus National Forest Over-Snow Vehicle ("OSV") Use Designation Record of Decision and the underlying analysis and actions (the "Decision"). The Decision significantly reduces the acreage open to cross-country motorized OSV use from that previously and historically available to OSV recreationists on the Stanislaus National Forest.[1]

5.     This is a civil action for declaratory and injunctive relief, arising under the laws of the United States, including the Administrative Procedure Act ("APA"), 5 U.S.C. §§701 *et seq*.; U.S. Forest Service Travel Management regulations, 36 C.F.R. Part 212; the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§4321 *et seq*.; the National Forest Management Act ("NFMA"), 16 U.S.C. §§1600 *et seq*.; and implementing regulations established pursuant to these federal statutes.

6.     Plaintiffs seek a declaration that the Forest Service's Decision designating 119,104 acres of National Forest System ("NFS") lands and 83.7 miles of trails for OSV use within the Stanislaus National Forest is arbitrary and capricious under the APA and fails to comply with NEPA, NFMA, and the Forest Service's Travel Management regulations.

---

[1] As used in this Complaint, the term "OSV" generally applies to snowmobile use but also includes other forms of motorized snow travel. The term "cross-country" means travel by OSVs off of established trails such as in an open, snow-covered meadow.

7.     Plaintiffs additionally seek injunctive relief to redress the injuries caused by these violations of the law.

8.     Should Plaintiffs prevail, Plaintiffs will seek an award of costs, attorney fees, and other expenses under the Equal Access to Justice Act, 22 U.S.C. §2412.

### III. PARTIES

9.     Plaintiff SSF is a nonprofit organization dedicated to preserving and protecting snowmobile and winter backcountry access in the Sierra Nevada mountains. SSF's members are OSV users and backcountry skiers who recreate in the Sierra Nevada mountains, including the areas of the Stanislaus National Forest that are the subject of the challenged Decision. The Decision will harm SSF's members by further restricting their snowmobile access in the affected areas of the Stanislaus National Forest subject to the Decision.

10.     Plaintiff BlueRibbon Coalition Inc. ("BRC") is a national nonprofit membership organization dedicated to preserving recreational access to public lands, including the federal public land in the Stanislaus National Forest. BRC has a longstanding interest in motorized vehicle use and management of the National Forest System, including for OSV use. BRC has maintained an ongoing presence in the development of the Decision. BRC has members in all 50 states, including California, and BRC members use various motorized and non-motorized means, specifically including OSV use of the Stanislaus National Forest. BRC has a long-standing interest in the protection of the values and natural resources addressed in this process, and regularly works with land managers to provide recreation opportunities, preserve resources, and promote cooperation between and among public land visitors.

11.     Plaintiff ACSA is a national-level association of state snowmobile user associations. ACSA engages in educational efforts regarding safe and smart snowmobiling and works to preserve and improve the activity of snowmobiling.

12.     Plaintiff John Watts owns property in Bear Valley, California and the Eagle Meadows area.  Mr. Watts is a resident of Alpine County, California. Plaintiff Jeffrey Wittman is a resident of Tuolumne County, California and owns a cabin in the Long Valley area. Plaintiff Mary Krupka is a resident of Turlock, California. These Plaintiffs all frequently ride

snowmobiles in the areas of the Stanislaus National Forest that are the subject of the challenged Decision, including both the Highway 108 and Highway 4 corridors. The Decision will prevent them from riding snowmobiles in areas they have historically accessed and visited, and but for the Decision would visit in the future, in the Stanislaus National Forest.

13.     Plaintiffs participated to the extent allowed in the proceedings leading to the Forest Service's Decision challenged here, including submitting comments on the August 23, 2018 draft Environmental Impact Statement ("EIS") and objections to the March 22, 2019 final EIS and draft Record of Decision ("ROD").

14.     Defendant the United States Department of Agriculture ("Department of Agriculture) is a federal agency comprised of 29 agencies and offices. The United States Forest Service is one of the federal agencies within the Department of Agriculture. The Defendant the Pacific Southwest Region of the Forest Service ("Forest Service") is the region of the Forest Service in which the Stanislaus National Forest is located and has responsibility for oversight and regional guidance for the management of NFS lands within that region, including the Stanislaus National Forest.

15.     At all times relevant hereto, Defendant Jason Kuiken was the Forest Supervisor of the Stanislaus National Forest. Forest Supervisor Kuiken is the ultimate authority for the procedures, actions, and decisions of the Stanislaus National Forest and is charged with ensuring that the Forest Service complies with applicable law. Forest Supervisor Kuiken is sued solely in his official capacity.

**IV. VENUE**

16.     Venue is proper in this district pursuant to 28 U.S.C. §1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district, and because Defendants' regional and Forest Supervisor's offices are located in this district.

# V.  LEGAL BACKGROUND

## A.  The National Environmental Policy Act

17.    NEPA directs all federal agencies to assess the environmental impacts of, and alternatives to, their proposed actions that significantly affect the quality of the human environment. 42 U.S.C. §4332(2)(C).

18.    The Council on Environmental Quality ("CEQ") has promulgated uniform regulations to implement NEPA that are binding on all federal agencies. 42 U.S.C. §4342; 40 C.F.R. §§1500 *et seq.*[2]

19.    NEPA's twin aims are (1) to foster informed decision making by requiring agencies to consider the environmental impacts of their proposed actions and (2) to ensure that agencies inform the public that they considered environmental concerns. 42 U.S.C. §4331; 40 C.F.R. §1500.1. To accomplish these goals, federal agencies must prepare an EIS to consider the effects of each "major Federal action[] significantly affecting the quality of the human environment." 42 U.S.C. §4332(C).

20.    An EIS must take a hard look at the environmental impacts of a proposed action before reaching a decision and "provide full and fair discussion of significant environmental impacts." 40 C.F.R. §1502.1; 42 U.S.C. §4332(C). An EIS must also "[r]igorously explore and objectively evaluate all reasonable alternatives" and explain why other alternatives were eliminated from detailed study. 40 C.F.R. §1502.14(a); 42 U.S.C. §4332(C)(iii), (E).

21.    Agencies like the Forest Service must consider a "No-Action" alternative in every case because it provides a benchmark against which the action alternatives are evaluated. In the context of a land use plan amendment, the "No-Action" alternative assumes that the proposed plan amendment is not adopted.

---

[2] On July 16, 2020, CEQ issued a Final Rule amending its NEPA regulations, found at 40 C.F.R. Parts 1500-1508. *See* Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 43304 (July 16, 2020) ("CEQ Final Rule"). The CEQ Final Rule became effective September 15, 2020, and applies to any NEPA process begun after September 14, 2020. Here, the Forest Service applied the CEQ NEPA regulations in place at the time the NEPA process was initiated through publication of the Notice of Intent on June 26, 2015.

22.     To fulfill NEPA's public participation goals, federal agencies must assess and consider comments both individually and collectively and properly respond to comments in a final EIS. 40 C.F.R. §§1502.9(c), 1503.4(a). If an agency "makes substantial changes in the proposed action that are relevant to environmental concerns" or "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts[,]" the agency must issue a supplemental draft and final EIS. *Id.* §1502.9(d).

23.     At the time of its decision, an agency must release a "record of decision" that identifies and discusses all factors that the agency balanced when making its decision and state how those considerations entered into its decision. *Id.* §1505.2.

**B.  The Travel Management Rule**

24.     In 2005, the Forest Service overhauled the travel planning process for the national forests and finalized its "Travel Management Rule" to provide more effective management of public motor vehicle use. 70 Fed. Reg. 68,264 (Nov. 9, 2005) (codified at 36 C.F.R. Part 212). The 2005 Travel Management Rule includes Subpart B, which requires designation of those roads, trails, and areas on NFS lands where public motor vehicle use is allowed (36 C.F.R. § 212.51(a)), and Subpart C, which allows, but does not require, the regulation of OSV use. 70 Fed. Reg. at 68,290. The Forest Service recognized the difference between management of OSV use and management of other types of motor vehicle use on NFS lands, explaining that "[u]nlike other types of motor vehicles traveling cross-country, OSVs generally do not create a permanent trail or have a direct impact on soil and ground vegetation." 70 Fed. Reg. at 68284.

25.     In 2015, the Forest Service revised Subpart C of the Travel Management Rule to require the designation of areas and trails for OSV use to "provide[] for a system of National Forest System roads, National Forest System trails, and areas on National Forest System lands that are designated for [OSV] use." 36 C.F.R. §212.80(a); 80 Fed. Reg. 4501 (Jan. 28, 2015). This Subpart requires the Stanislaus National Forest to designate OSV use of the NFS lands "where snowfall is adequate for that use to occur, and, if appropriate, shall be designated by

class of vehicle and time of year." 36 C.F.R. §212.81(a). The Forest Service continued to recognize the difference between management of OSV use and management of other types of motor vehicle use on NFS lands resulting from the more limited environmental impacts of OSVs, which "generally do not create a permanent trail or have a direct impact on soil and ground vegetation." 80 Fed. Reg. at 45011.  The Forest Service also recognized that "adequate snowfall" may vary given the circumstances and it declined to impose a one-size-fits-minimum snow depth requirement.

26.    The Travel Management Rule contains general and specific criteria the Forest Service must consider and apply when designating roads, trails, and areas for motor vehicle use on National Forests. 36 C.F.R. §212.55(a).

27.    In designating trails and areas, the Forest Service must consider and apply specific criteria with the objective of minimizing damage to forest resources, harassment of wildlife, disruption of wildlife habitat, and conflicts between motor vehicle use and existing or proposed recreational uses of the national forest. 36 C.F.R. §212.55(b). These specific criteria are often referred to as the "minimization criteria." The Forest Service must not only consider these minimization criteria but affirmatively demonstrate how it evaluated and applied the minimization criteria in any decision designating trails and areas for motor vehicle use with the objective of minimizing impacts and conflicts.

28.    General criteria for the Forest Service's consideration include effects on natural and cultural resources, public safety, provision of recreational opportunities, access needs, conflicts among uses of the Forest, and the availability of resources for necessary administration and maintenance. 36 C.F.R. §212.55(a).

**C.  National Forest Management Act**

29.    NFMA requires the Forest Service to develop and implement a land and resource management plan ("Forest Plan") for each unit of the National Forest System. 16 U.S.C. §1604. Forest Plans guide natural resource management activities forest-wide, setting standards, management area goals and objectives, and monitoring and evaluation requirements. A Forest

Plan must provide for multiple uses for the forest, including density, recreation, range, wildlife, fish, timber, and wilderness.

30.     Under NFMA all permits, contracts, and other instruments for the use of National Forest System lands "shall be consistent with the land management plans." *Id.* §1604(i). Therefore, after a Forest Plan is developed, all subsequent agency action, including site-specific actions, must comply with NFMA and the governing Forest Plan.

31.     The Forest Plan governing the Stanislaus National Forest was adopted in 1991 ("Stanislaus Forest Plan") and has been amended multiple times of the years.   The 2017 Stanislaus National Forest Plan Direction represents the current Stanislaus Forest Plan management direction, based on the original Stanislaus Forest Plan as modified through the Forest Plan amendment process. Stanislaus National Forest, Forest Plan Direction 115 (March 2017) ("Stanislaus Forest Plan Direction").

32.     The Stanislaus Forest Plan's goal for recreation includes providing "a wide range of recreation opportunities directed at various experience levels to meet current and projected demand, including campgrounds, hiking trails, picnic areas, OHV trails, etc." and, more specifically, to "provide a variety of off-highway vehicle (OHV) recreational opportunities in a manner consistent with protection of wildlife and other resources, and with non-motorized recreation." Stanislaus Forest Plan Direction at 4.

**D.  Administrative Procedure Act**

33.     The APA governs judicial review of agency actions and provides a right to judicial review for any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. §702. The APA directs courts to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* §706(2)(A). Agency actions must also be set aside if made "without observance of procedure required by law." *Id.* §706(2)(D).

# VI. FACTUAL BACKGROUND

## A.  Stanislaus National Forest and OSV Use

34.    The Stanislaus National Forest encompasses 898,099 acres on the western slope of the Sierra Nevada mountain range ranging in elevation from 1,500 to over 11,000 feet above sea level.   Almost 215,000 acres within the Stanislaus National Forest are designated Wilderness Areas  under the Wilderness Act of 1964, 16 U.S.C. §1131, *et seq*., and are closed to all motorized travel.  *See* Stanislaus National Forest OSV Use Designation Final Environmental Impact Statement at 27, 30 (March 2019) ("FEIS"). The Stanislaus National Forest also includes 100,299 acres of Near Natural management areas and 23,107 acres of Proposed Wilderness management areas, both of which the Forest Plan directs the Forest Service to manage as non-motorized. FEIS at 30; Forest Plan Direction at 65, 115. Although the Stanislaus Forest Plan provides for Near Natural and Proposed Wilderness areas to be managed as semi-primitive non-motorized, they were never formally closed to OSV use and have been historically used by OSV riders.

35.    The forest has four ranger districts divided along three highway corridors that provide access to most recreational opportunities: Highway 120 to the south (Groveland District), Highway 108 along the Middle Fork of the Stanislaus River (Mi-Wok and Summit Ranger Districts), and Highway 4 to the north (Calaveras Ranger District). Of the three corridors, Highway 108 serves the most recreational use in the Forest. FEIS at 90.

36.    The Stanislaus National Forest is a destination for a variety of winter recreation activities, including backcountry snowmobiling. Prior to the Decision, the Forest Service permitted cross-country OSV use in the Stanislaus National Forest wherever there was adequate snowfall in areas that allowed for motorized use and in some Near Natural and Proposed Wilderness areas. *See* FEIS at 91. This included areas below 5,000 feet in elevation.

37.    For over 30 years, the Forest Service, Pacific Southwest Region, in cooperation with the California Department of Parks and Recreation (California State Parks) Off-Highway Motor Vehicle Recreation Division encouraged snowmobiling by maintaining and grooming certain NFS trails.

38.     The Stanislaus Forest Plan Direction requires a minimum of 12 inches of snow depth for cross-country OSV use but does not specify a minimum snow depth for OSV travel on existing trails. Stanislaus Forest Plan Direction at 53. Conditions on existing OSV trails vary considerably throughout the Stanislaus National Forest in both the level of snow compaction and the underlying ground conditions, which makes the blanket 12-inch minimum snow depth requirement inappropriate.

**B.  Project Scoping and Draft EIS**

39.     Recognizing the "need to provide a manageable, designated OSV system of trails and areas within the Stanislaus National Forest that is consistent with and achieves the purposes of the Forest Service Travel Management Rule," the Forest Service issued a Notice of Intent to Prepare an EIS for a proposal to designate OSV use on roads, trails, and areas and identify trails for grooming within the Stanislaus National Forest. 80 Fed. Reg. 36760 (June 26, 2015).  The Forest Service then began the formal 45-day scoping period under NEPA.  Scoping is one of the earliest steps under NEPA to gather internal and external input for determining the scope of issues to be addressed in an EIS and for identifying any significant issues related to a proposed action. *See* 40 C.F.R. §1501.7. During the 45-day scoping period, the Forest Service received over 100 responses regarding its proposal to designate areas and trails in the Stanislaus National Forest for OSV use. Stanislaus National Forest OSV Use Designation Draft EIS (August 2018) ("DEIS") at 10.

40.     In August 2018, the Forest Service released the DEIS for the Stanislaus National Forest OSV Use Designation project. The DEIS analyzed five alternatives to meet the project purpose of providing "for a system of NFS roads, NFS trails, and areas on NFS lands that are designated for over-snow vehicle use where snowfall is adequate for that use to occur." DEIS at 8. All of the alternatives imposed a minimum snow-depth requirement of at least 12 inches for both cross-country and trail OSV use. With a single exception, the other proposed alternatives significantly reduced OSV access as summarized below:

| OSV Access | Alternative 1 | Alternative 2 | Alternative 3 | Alternative 4 | Alternative 5 |
|---|---|---|---|---|---|
| Total acreage available for cross-country OSV use | 140,895 | 684,585 | 116,868 | 191,099 | 97,763 |
| Total miles of NFS Trails available for OSV Use | 101.89 | 108.86 | 108.5 | 105.29 | 56.69 |

Source: DEIS xii (Table S-2), xv (Table S-9), and 29.

41.     All of the alternatives include a minimum snow-depth requirement of at least 12 inches for both cross-country and trail OSV use. *See* DEIS xvi (Table S-11).

42.     Alternative 1 was the Forest Service's initial proposed action. In addition to the above OSV use area and trail designations and requirements, this Alternative imposed a minimum snow depth requirement of 24 inches within Stanislaus Meadow. DEIS 27.

43.     Alternative 2 was considered the "no-action" alternative because it would have maintained the status quo of OSV access on the Stanislaus National Forest. Under this alternative, the Forest Service would not designate acreage and trails for OSV use, but existing OSV use would be allowed to continue. The DEIS estimated that 684,505 acres of NFS lands were available for public cross-country OSV travel under the then-existing management conditions. DEIS 29-30.

44.     Alternative 3 was favored by OSV opponents and focused on "maintain[ing] or preserv[ing] nonmotorized recreation opportunities" to the necessary exclusion of OSV recreation. It was developed during the project development or "scoping" process. It designated no OSV-use areas or trails in Near Natural or Proposed Wilderness Areas, which means that historic OSV use in these high-quality snow areas would be eliminated. DEIS at xi. This Alternative also increases the minimum snow-depth requirement to 24 inches in both the Stanislaus Meadow area and the Highland Lakes area.

45.     Alternative 4 was the least restrictive alternative and was developed during scoping to provide quality OSV recreation opportunities based in part on historical use. It was the only alternative to designate additional acres for public, cross-country OSV use.

46.     Alternative 5 was the Forest Service's preferred alternative. It designates less acreage for cross-country OSV use than any of the other alternatives because it restricted OSV use in areas or on trails that the Forest Service believed had access issues and were unlikely to meet the minimum snow-depth requirements often enough to warrant their designation. Like Alternative 3, Alternative 5 includes a 24-inch minimum snow depth in the Stanislaus Meadow and the Highland Lakes areas. Additionally, Alternative 5 imposes new seasonal restrictions to the 411 acres near the Sonora Pass, necessarily closing this area to OSV use on April 15 (regardless of snow coverage) unless the Forest Supervisor issues a Forest Order for an earlier or later closure date (but no later than the last Sunday in April).

**C.  FEIS and Draft ROD**

47.     After receiving public comments on the DEIS, the Forest Service issued the FEIS and draft Record of Decision ("Draft ROD") in March 2019.  The changes made to the total acreage available for cross-country OSV use in the FEIS from the DEIS are shown below.

| OSV Access | Alternative 1 | Alternative 2 | Alternative 3 | Alternative 4 | Alternative 5 |
|---|---|---|---|---|---|
| DEIS - Total acreage available for cross-country OSV use | 140,895 | 684,585 | 116,868 | 191,099 | 97,763 |
| FEIS - Total acreage available for cross-country OSV use | 140,895 | 351,108 | 116,868 | 191,099 | 129,780 |

Source: DEIS xii (Table S-2), and 29; FEIS xii (Table S-2).

48.     The FEIS revised Alternative 2, the no-action alternative, by decreasing the acreage available for OSV use under existing conditions from 684,585 to 351,108 acres. FEIS xi. As explained in the DEIS, the 684,585-acre estimate for existing OSV use included more than 250,000 acres that occur below 5,000 feet in elevation and, in the Forest Service's estimation, may not consistently receive snow in quantities adequate to support OSV use. DEIS 30. In the FEIS, the Forest Service went a step further and summarily excluded all of area below 5,000 feet in elevation—over 300,000 acres-- which the FEIS incorrectly claimed "never receive even a few inches of snow and have not and would not ever possibly be 'available' for

OSV use due to lack of snow." FEIS 27-28. The FEIS did not explain the 50,000-acre difference in the calculation of acreage below 5,000 feet in elevation between the DEIS and the FEIS.  In total, the changes to Alternative 2, including the exclusion of all acreage below 5,000 feet in elevation, reduced the reported OSV-use areas "available for OSV use" by 333,397 acres between the DEIS and the FEIS. FEIS at 29.

49.    All of the alternatives in the FEIS begin with the assumption that no land below 5,000-feet elevation is available for OSV use, yet the FEIS cites to no underlying analysis or study supporting this assumption. The FEIS does not consider that in many years—2017 and 2019, for example—areas below 5,000 feet easily satisfied the minimum snow-depth requirements for significant periods of time. Substituting elevation as a surrogate for actual snow depth is not only demonstrably unreliable, it fails to satisfy the purpose and need for the project to accurately define where adequate snow cover occurs.

50.    All of the alternatives in the FEIS include the 12-inch minimum snow depth requirement for OSV use on trails in addition to cross-country OSV use. The FEIS fails to recognize that the application of the 12-inch minimum snow depth requirement to trails is a new management restriction, incorrectly stating that "there would be no change in the availability of motorized OSV recreation opportunities as a result of the minimum snow depth requirement." FEIS at 121.

51.    Additionally, Alternatives 3 and 5 impose a 24-inch minimum snow depth ostensibly to protect the Yosemite toad and Sierra Nevada yellowlegged frog.  FEIS at xii. However, when analyzing the effects of OSV use on aquatic resources, FEIS stated that "no measurable effects on aquatic resources, riparian systems, or meadows have been observed" through monitoring on the Stanislaus National Forest. FEIS at 170. The FEIS also acknowledged that "monitoring within the American River Ranger District of neighboring Tahoe National Forest documented similar findings (see table 33), which is particularly noteworthy given the fact that the Tahoe National Forest has no minimum snow depth requirements for OSV use." *Id.*

52.     The FEIS also revised Alternative 5 based on feedback received on the DEIS. Some of the modifications to Alternative 5 in FEIS include the following:

    a)     Designating a larger quantity of high-quality, cross-country OSV-use areas (including additional acres in Near Natural areas);

    b)     Restricting OSV use in specific areas to preserve more contiguous, accessible, lands for quiet, non-motorized winter recreation (e.g., the west and east shores of Lake Alpine, the corridor from Lake Alpine Sno-Park, the 2,882 acres adjacent to the Bear Valley cross-country ski special use permit area, and the area south of Lealand Meadow to Herring Creek Road);

    c)     Designating more miles of OSV-use trails where use is known to concentrate along that route corridor;

    d)     Refining OSV-use area boundaries to better utilize topography and other natural features to enhance compliance and enforcement; and

    e)     Adjusting OSV-use designations to comply with land ownership and legal access (e.g., private property, jurisdiction, easements, rights-of-way).

53.     The Draft ROD selected Alternative 5, as presented in the FEIS, which includes the designation of 129,780 acres for cross-country OSV use, seasonal closure dates for 411 acres near the Sonora Pass, a 24-inch minimum snow depth in the Stanislaus Meadow and the Highland Lakes areas, and a 12-inch minimum snow depth for all other areas and trails.

54.     The Draft ROD imposes a 63% decrease in OSV-permissible acreage from the status quo of Alternative 2 (a 351,100-acre reduction). Alternative 5 effectively prohibits recreationists from using OSVs on approximately 221,320 more acres than have been historically permitted. In this regard, Alternative 5 is only slightly less restrictive than Alternative 3, the most OSV-use-restrictive alternative. Under Alternative 3's restrictions, the area available for OSV use would be reduced to 116,868 acres—a 67% decrease from the acreage historically available for OSV use.

55.     Plaintiffs each timely submitted objections to the Draft ROD.

**D.  The Final ROD**

56.    Forest Supervisor Kuiken signed the final Record of Decision ("Final ROD") on July 13, 2021. As in the Draft ROD, the Final ROD adopted many aspects of Alternative 5, including the Minimum Snow Depth Requirements, Season of Use Designations, Temporary Winter Stream Crossings, OSV-use trail designations (both non-groomed and those available for grooming), and the OSV-use designations within the Mi-Wok, North Highway 4, and Spicer OSV-use areas. The Final ROD also includes OSV-use designations in the Alpine, Alpine East, Eagle, Highway 108, and Highway 108 East OSV-use areas which differ from Alternative 5. The changes made to the total acreage available for cross-country OSV use between the Draft ROD and the Final ROD are summarized below.

|  | Total acreage  available for cross-country OSV use | Percentage of Forest open to cross-country OSV use |
|---|---|---|
| Draft ROD Selected Alternative | 129,780 | 14.5% |
| Final ROD Selected Alternative | 119,104 | 13.2% |

Source: Draft ROD at 1; Final ROD at 2.

57.    The Final ROD deviates significantly from the Draft ROD by omitting quality, high-elevation areas including Castle Rock, Three Chimneys and Cooper Peak off of Highway 108 (Map 1) and the area between Highland Lakes Road and Pacific Valley (Map 2). The pink areas of the maps below show where OSV use is permitted under the Final ROD and the yellow-outlined areas show the quality, high-elevation areas in which the Final ROD excludes OSV use. The following two maps illustrate a comparison of FEIS Map 5 and the Draft ROD Map with the Final ROD map.

**Map 1**



**Map 2**



58.     Although the yellow-outlined exclusionary areas shown in Maps 1 and 2 permitted OSV use in Alternative 5, the Final ROD does not explain why the Forest Service ultimately *excluded* OSV use from these areas.

59.     Despite stating that the FEIS's effects analysis showed that "the mere presence of OSV use within Near Natural management areas did not assuredly cause a substantially adverse impact or lessening of protections for any one species," the Final ROD nonetheless chose to reduce the area available for OSV use in the Pacific Valley and Eagle/Night Near Natural areas "to mollify the persistent and growing wildlife concerns." Final ROD at 7.

60.     The Final ROD imposes seasonal closure dates for 411 acres near Sonora Pass to minimize the potential for OSV use to cause adverse impacts to potential Sierra Nevada Red Fox breeding. Yet the FEIS concedes that there is *no evidence* regarding potential impacts of OSV use on Sierra Nevada Red Fox. FEIS at 44. Rather, evidence shows that the red fox population in this area is increasing even though OSVs have historically accessed this area past this seasonal closure date when there was adequate snow depth. Final ROD at 8.

61.     The Final ROD designates 119,104 acres for cross-country OSV use—at least a 66% decrease from the acreage previously available for OSV use as shown under Alternative 2 in the FEIS. In this regard, the Final ROD designates a very similar amount of acreage for OSV use as Alternative 3, which represented the most OSV-restrictive of the five alternatives.

62.     In sum, the Final ROD strongly favors non-motorized recreation over OSV recreation.  It effectively creates new non-motorized areas in the Stanislaus National Forest without a sound basis or explanation. *See* ROD at 11 ("Although this Decision does not specifically designate non-motorized winter recreation areas on the Forest, *OSV use was not designated in specific areas to maintain desired*, *accessible, quiet areas for nonmotorized winter recreation opportunities and solitude*.") (Emphasis added). The Final ROD thus fails to establish a manageable system of designated NFS trails and areas on NFS lands for OSV use, and therefore does not meet the purpose and need of the Project.

## FIRST CLAIM FOR RELIEF

### (Violation of National Environmental Policy Act—Failure to Adequately Consider Environmental Impacts)

63.     Plaintiffs reallege the paragraphs above as though set forth fully herein.

64.     NEPA requires that federal agencies take a "hard look" at all direct, indirect, and cumulative impacts of their proposed actions, using high-quality information, accurate scientific analyses, and scientific integrity. Defendants violated these requirements by relying on the DEIS and FEIS that failed to take a "hard look" at the impacts of OSV-use designation, including by

a)     Failing to consider a true "no-action" alternative that accurately reflects baseline conditions;

b)     Failing to provide sufficient data or analysis to explain the adoption of a 12-inch minimum snow-depth requirement;

c)     Failing to cite high quality scientific evidence in support of the Final ROD's directive to "minimize the proportion NFS lands designated for motorized use located within known occupied Sierra Nevada red fox territories or within identified suitable habitat";

d)     Failing to sufficiently analyze and support site-specific conclusions, including the Forest Service's assumption that snow accumulation is categorically inadequate for OSV use below 5,000 feet in elevation and in failing to allow OSV use in certain Near Natural areas and recommended wilderness areas;

e)     Failing to adequately address the reason for excluding areas within the southern reaches of the Eagle Meadows area from OSV use; and

f)     In other ways to be enumerated in the briefing in this matter.

65.     For the foregoing reasons, the Court should hold that the Decision is arbitrary, capricious, an abuse of discretion, and not in accordance with NEPA and the APA and therefore must be reversed, set aside, and vacated under the APA, 5 U.S.C. §706(2)(A), (D).

66.     These challenged actions have caused or threaten serious injury to Plaintiffs and SSF's members, entitling Plaintiffs to the relief requested below.

**SECOND CLAIM FOR RELIEF**

**(Violation of National Environmental Policy Act—Failure to
Meet Purpose and Need of the Project)**

67.     Plaintiffs reallege the paragraphs above as though set forth fully herein.

68.     The FEIS defines the purpose and need of the Project as "establish[ing] a manageable system of designated NFS trails and areas on NFS lands for OSV use in the Stanislaus National Forest to . . . provide access, ensure that OSV use occurs when and where there is adequate snow for that use to occur, promote the safety of all users, enhance public enjoyment, minimize impacts to natural and cultural resources, and minimize conflicts among the various uses of NFS lands." FEIS at 8.

69.     By excluding all lands below 5,000 feet in elevation from consideration for OSV use and adopting a 12-inch minimum snow-depth requirement across all alternatives, the FEIS failed to accurately define where adequate snow cover occurs. Neither a 12-inch minimum snow depth nor a 5,000-foot elevation cut-off are required by Subpart C of the Travel Management Rule.

70.     The Decision's designation of only 119,104 acres for cross-country OSV use— less than 34% of the area that has historically been available for OSV use—and improperly focuses on enhancing non-motorized opportunities to the exclusion of OSV opportunities. The selected alternative fails to meet the purpose and need for the Project.

71.     The Decision's failure to designate areas needed to access other areas designated for OSV use, certain historically used trails for grooming, and the open areas for cross-country OSV use results in a system of designated OSV-use trails and areas that is unmanageable.

72.     The Forest Service's selected alternative fails to meet the Project's purpose and need, making the Forest Service's Decision arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, entitling Plaintiffs to the relief requested below.

**THIRD CLAIM FOR RELIEF**

**(Violation of the National Forest Management Act—Inconsistency with the Forest Plan)**

73.    Plaintiffs realleges the paragraphs above as though set forth fully herein.

74.    The NFMA is one part of the statutory framework for management of the National Forest System. 16 U.S.C. §§1600 *et seq*. The NFMA requires the Forest Service to develop a land and resource management plan for each National Forest, including the Stanislaus National Forest. 16 U.S.C. §1604. Pursuant to the NFMA, the Decision must be consistent with the Stanislaus Forest Plan. 16 U.S.C. §1604(i).

75.    The Stanislaus Forest Plan's goal for recreation includes providing "a wide range of recreation opportunities directed at various experience levels to meet current and projected demand, including campgrounds, hiking trails, picnic areas, OHV trails, etc." and, more specifically, to "provide a variety of off-highway vehicle (OHV) recreational opportunities in a manner consistent with protection of wildlife and other resources, and with non-motorized recreation." Stanislaus Forest Plan Direction at 4.

76.    Contrary to the Stanislaus Forest Plan, the Decision eliminates OSV use in unique, high-elevation, high-volume snow areas.  By removing almost all high elevation alpine areas from OSV use, the Decision fails to designate a variety of OSV recreational opportunities consist with the Forest Plan's goal for recreation.  In this and other ways to be established in the briefing in this case, the Decision violates the NFMA and its implementing regulations.

77.    The Decision's inconsistency with the Stanislaus Forest Plan violates NEPA and is arbitrary, capricious, an abuse of discretion, in excess of statutory authority and limitations, and otherwise not in accordance with the law. 5 U.S.C. §706(2).

**FOURTH CLAIM FOR RELIEF**

**(Violation of the National Forest Management Act and National Environmental Policy Act—Inadequate Scientific Information in the Evaluation of Effects)**

78.    Plaintiffs realleges the paragraphs above as though set forth fully herein.

79.    The Stanislaus Forest Plan's goal for recreation includes providing "a variety of off-highway vehicle (OHV) recreational opportunities in a manner *consistent with protection of*

*wildlife and other resources*, and with non-motorized recreation." Stanislaus Forest Plan Direction at 4 (emphasis added).

80.     In addition to failing to provide a variety of OSV recreational opportunities, the Decision is inconsistent with the Forest Plan because it eliminates historic OSV areas based on the assumptions that OSV use will endanger or harm wintering wildlife, including the Sierra Nevada red fox, without the best available scientific information, as the NFMA regulations require, and without accurate scientific analysis or high quality information, as NEPA and its regulations require. In this and other ways to be established in the briefing in this case, the Decision violates NEPA, NFMA and their implementing regulations.

81.     The Decision's failure to use the best available science to support its determinations regarding the protection of wildlife is arbitrary, capricious or not in accordance with NFMA, in violation of 5 U.S.C. §706(2)(A).

82.     Similarly, the Decision's failure to use accurate scientific analysis or high-quality information to support its determinations regarding the protection of wildlife is arbitrary, capricious or not in accordance with NEPA, in violation of 5 U.S.C. §706(2)(A).

## FIFTH CLAIM FOR RELIEF

### (Violation of the Travel Management Rule—Arbitrary Application of the Minimization Criteria)

83.     Plaintiffs reallege the paragraphs above as though set forth fully herein.

84.     The Travel Management Rule requires the Forest Service to consider and apply specific criteria with the objective of minimizing damage to forest resources, harassment of wildlife, disruption of wildlife habitat, and conflicts between motor vehicle use and existing or proposed recreational uses of the Forest. 36 C.F.R. §212.55(b). The Forest Service must not only consider these specific criteria but affirmatively demonstrate how it evaluated and applied the minimization criteria in any decision designating trails and areas for motor vehicle use with the objective of minimizing impacts and conflicts.

85.     The Final ROD's exclusion of high-elevation areas included but not limited to the areas around  Castle Rock, Three Chimneys, and Cooper Peak, and between Highland Lakes

Road and Pacific Valley, is not supported by the Travel Management Rule's required analysis of general and specific criteria. These areas were included in the OSV-use designations under Alternative 5 and the OSV-use designation adopted in the Draft ROD.

86.     The Forest Service's failure to adequately consider the Travel Management Rule's specific criteria as to the exclusion of certain high-elevation areas renders the Forest Service's Decision arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, entitling Plaintiffs to the relief requested below.

87.     Additionally, the Forest Service's decision to restrict OSV use in order to minimize impacts to the Sierra Nevada red fox was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, entitling Plaintiffs to the relief requested below.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests the following relief:

A.  Enter judgment in favor of Plaintiffs on all claims for relief raised in the Complaint;

B.  Declare unlawful and set aside the Decision;

C.  Remand the Decision for further analysis and action in accordance with applicable law;

D.  Enjoin the Defendants from relying on, implanting, or enforcing the Decision, including without limitation any of the OSV use designations or restrictions in the Decision pending the Defendants' completion and circulation of an environmental document and new Decision complying in full with the requirements of NEPA, NFMA, and the APA;

E.  Award Plaintiffs its costs, including reasonable attorney's fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. §241 *et seq.*, Federal Rule of Civil Procedure 54, and any other applicable rule or statute; and

1        F.   Such further relief as is just and that this Court may require.

2    DATED this 13th day of October 2021.

3                                    HOLLAND & HART LLP

4

5                                    By:      /s/ Frank Z. LaForge
                                         Frank LaForge
6                                        Murray D. Feldman
7                                        Alison C. Hunter

8                                    *Attorneys for Sierra Snowmobile Foundation, et al.*

9
   17371080
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28